## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TAMMY HARTZLER<br>10855 Parkgate Drive<br>Nokesville, VA 20181,<br><br>Plaintiff,<br><br>v.<br><br>CHAD F. WOLF, ACTING SECRETARY,<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY,<br>3801 Nebraska Avenue, NW<br>Washington, DC 20016<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 20-3802<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff TAMMY HARTZLER, by her undersigned counsel, complains of Defendant CHAD

F. WOLF, in his official capacity as ACTING SECRETARY OF THE U.S. DEPARTMENT OF

HOMELAND SECURITY, as follows:

## NATURE OF THE CASE

1. Tammy Harzler began working for the Federal Emergency Management Agency ("FEMA")

   as an intern in 2014.  She was converted to a career employee the following year, and she

   received a promotion the year after that.

2. Based on her excellent performance record, you would never know that she suffers from

   several debilitating medical conditions, including arthritis, cancer, an autoimmune disorder,

   and nerve damage in both legs.

3. Hartzler's supervisor, Joe Burchette, did not like having an employee who needed reasonable

   accommodations.  Burchette mocked Hartzler's disabilities and made jokes about her needing

to find a new job.  He repeatedly refused to process Hartzler's requests for basic reasonable accommodations, such as an ergonomic chair and workstation.

4.   Hartzler had no choice but to file an EEO complaint against Burchette.

5.   When Burchette learned that Hartzler exercised her legal rights, he doubled down.  He intentionally assigned her to deployments that exceeded her medical restrictions.  Burchette knew that Hartzler's disabilities made it difficult for her to drive long distances, and he forced her to drive to assignments in Alabama and Florida.

6.   When Hartzler refused to drop her discrimination case, Burchette put her on a Performance Improvement Plan and had her fired.

7.   This is an action to recover damages for Defendant's unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII")*,* Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, *et seq.* (the "Rehabilitation Act"), and the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.* (the "FMLA").

## JURISDICTION AND VENUE

8.   This Court maintains jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.   Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant formerly employed Plaintiff in the District of Columbia.

## THE PARTIES

10.   During the relevant time period, Plaintiff worked for FEMA and was Defendant's employee within the meaning of and entitled to the protections of Title VII, the Rehabilitation Act, and the FMLA.

11.   Defendant Chad F. Wolf is named in his official capacity as Acting Secretary of the U.S.

Department of Homeland Security.  At all relevant times, Defendant was Plaintiff's employer

within the meaning of and subject to the requirements of Title VII, the Rehabilitation Act, and

the FMLA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.

13. On November 16, 2017, Plaintiff timely filed a formal complaint of discrimination with the

    FEMA Office of Equal Rights.  FEMA assigned the complaint the case number HS-FEMA-

    02512-2017 (hereinafter, "Complaint 1").

14. On March 21, 2019, Plaintiff timely requested a hearing, before a U.S. Equal Employment

    Opportunity Commission ("EEOC") administrative judge ("AJ"), on Complaint 1.

15. On May 17, 2019, Plaintiff timely filed a second formal complaint of discrimination with the

    FEMA Office of Equal Rights.  FEMA assigned the second complaint the case number HS-

    FEMA-01037-2019 (hereinafter, "Complaint 2").

16. On January 29, 2020, Plaintiff timely requested a hearing on Complaint 2.

17. Pursuant to Plaintiff's request, on July 28, 2020, the EEOC AJ remanded Complaint 1 to

    FEMA to issue a Final Agency Decision ("FAD").

18. Pursuant to Plaintiff's request, on July 24, 2020, the EEOC AJ dismissed Complaint 2 and

    remanded the case to FEMA to issue a FAD.

19. On September 24, 2020, FEMA issued a single FAD addressing both HS-FEMA-02512-2017

    and HS-FEMA-01037-2019.

20. Plaintiff timely files this lawsuit within 90 calendar days of receipt of the FAD.

## STATEMENT OF FACTS

### Plaintiff is a member of a protected class.

21. Plaintiff suffers from arthritis, cancer, an autoimmune disorder, and nerve damage in both legs. These conditions substantially limit Plaintiff's major life activities, including cell growth, regulating her body temperature, lifting, walking, sitting, and driving, among others.

22. On June 15, 2014, Plaintiff began working for Defendant as an intern at FEMA.

23. In September 2015, Defendant converted Plaintiff to a career employee in the position of Program Analyst, GS-09.

24. In or around September 2016, Plaintiff was promoted to Program Analyst, GS-11.

25. During the relevant time period, Plaintiff's first-line supervisor was Emergency Management Specialist Joe Burchette (no disability, no protected activity).

26. At all relevant times, Defendant has been aware of Plaintiff's disabilities based on her requests for reasonable accommodations and her protected EEO complaints.

27. Despite Plaintiff's disabilities, she could successfully perform her job duties, with or without accommodations, throughout her employment with Defendant.

28. Plaintiff is a qualified individual with a disability.

### 2015: Burchette harassed Plaintiff.

29. From the beginning, Burchette treated Plaintiff less favorably than her colleagues who did not have disabilities, and/or did not engage in protected EEO activity.

30. Burchette made insulting comments about Plaintiff's medical conditions, disclosed information about Plaintiff's disabilities to other employees, reassigned her duties to other employees, and excluded her from meetings.

31. Burchette also denied Plaintiff training. For example, since 2015, Burchette denied Plaintiff's requests to participate in the FEMA Emerging Leaders Program.

32. Burchette's discriminatory treatment stifled Plaintiff's opportunities for promotion and career development.

33. Near the end of 2015, Plaintiff engaged in protected activity when she reached out to the FEMA Office of Equal Rights ("OER") to file a discrimination and harassment complaint against Burchette.

34. However, OER advised Plaintiff to just do her job and not make any waves because Burchette "had friends in high places."

35. Equal Employment Opportunity ("EEO") Specialist Andrea Pearson sent Plaintiff an email telling her not to send any more emails about complaints.

### Jan. 2017: Defendant failed to provide reasonable accommodations.

36. On or around January 10, 2017, Plaintiff sent Burchette a reasonable accommodations request for an ergonomic workstation and chair.

37. However, Burchette refused to process the request according to FEMA policy or engage in an interactive process.

38. Plaintiff submitted additional reasonable accommodations requests, which Burchette similarly failed to process according to FEMA policy.

39. Defendant did not timely provide reasonable accommodations for Plaintiff's disability. For example, Defendant did not provide reasonable accommodations for Plaintiff when she was deployed to Albany, New York, for a one-week exercise.

### June 2017: Burchette began reassigning Plaintiff's job duties.

40. In or around June 2017, Burchette began reassigning many of Plaintiff's job duties to other employees.

41. Burchette tasked Plaintiff with secretarial duties that were outside of her position description.

42. Plaintiff was also excluded from work meetings.  She would learn about the meetings after the fact from colleagues or at the weekly staff brief to the Director.

**Sept. 2017: Defendant deployed Plaintiff to Fort AP Hill after she engaged in EEO activity.**

43. On August 25, 2017, Plaintiff contacted an EEO counselor to initiate a discrimination complaint against Burchette.

44. Less than two weeks later, on September 5, 2017, Burchette notified Plaintiff that the NCRC team was being deployed to various disaster assignments.

45. Plaintiff was deployed to Fort AP Hill to "perform non-sedentary work" as logistics personnel, even though she was not trained as a logistics specialist or assigned a position task book for this position, in violation of FEMA FQS policy.

46. Burchette knew that, due to cancer, Plaintiff has no thyroid, cannot regulate her body temperature, and has blood pressure issues.  He laughed when he told Plaintiff she would be working outside in a muddy field checking in tractor trailers.

47. However, Plaintiff's Planning coworkers, who did not have disabilities or engage in EEO activity, were deployed to positions in alignment with their position description and skill set.

48. Plaintiff expressed concern to Burchette that the deployment duties exceeded her medical restrictions, and she provided a supporting letter from her physician.  However, Burchette refused to consider Plaintiff's medical limitations and approved the deployment anyway.  He laughed and told Plaintiff to wear sunscreen and boots.

49. Although Burchette told Plaintiff that the entire NCRC team was being deployed, some employees were permitted to remain at headquarters.  And unlike Plaintiff, other employees were allowed to decline deployments.  However, those employees did not have disabilities and had not engaged in protected activity.

**Sept. 2017: Defendant deployed Plaintiff to Richmond.**

50. Within 24 hours of driving to Fort Hill for her assignment, Plaintiff was informed that she was being redeployed to the Virginia Department of Emergency Management Emergency Operation Center ("VDOC") and was instructed to drive to Richmond without any discussion about her accommodation needs.

51. The following day, Plaintiff was reassigned to a sedentary planning position.

52. However, Defendant did not provide the requested accommodations —the ergonomic workstation and chair— or any others, to Plaintiff during this deployment.

53. A day and a half into her deployment to Richmond, Defendant changed Plaintiff's assignment again. Although Defendant knew that Plaintiff could not drive long distances because of her disabilities, she was ordered to drive to her new deployment at the Alabama Emergency Operations Center.

54. Defendant did not provide reasonable accommodations to Plaintiff in Alabama.

55. After completing her assignment in Alabama, Plaintiff returned to her home in Virginia.

56. However, Defendant immediately redeployed her to Alabama. Again, no reasonable accommodations were provided.

57. A few days after returning to Alabama, Defendant instructed Plaintiff to drive to Tallahassee, Florida. Defendant did not provide reasonable accommodations in Florida.

**Nov. 2017: Plaintiff filed a formal EEO complaint.**

58. Plaintiff filed her formal EEO complaint on November 16, 2017. She alleged discrimination on the bases of age, disability, sex, and retaliation.

59. Burchette's harassment increased and continued through the remainder of Plaintiff's employment with Defendant.

60. Burchette bullied and mocked Plaintiff on a near daily basis.  For example, Burchette openly referenced Plaintiff's EEO complaints and joked about her losing her job.

61. In a voice loud enough for Plaintiff to hear, Burchette told Plaintiff's Team Lead Eric Soucie to look for resumes for Plaintiff's position.

62. Burchette mocked Plaintiff's disabilities and asked questions about her medical conditions in front of other employees

63. In meetings, Burchette interrupted Plaintiff while she was providing briefings and excluded her from meetings.  Plaintiff would learn about meetings after the fact from colleagues.

64. Burchette micromanaged Plaintiff and scrutinized her more than her peers.

65. Plaintiff's supervisors delegated their unwanted assignments to Plaintiff, even though the tasks were outside the scope of her position description.

66. Additionally, between January 2018 and June 2019, Plaintiff's supervisors repeatedly changed Plaintiff's job title and position description without informing her or providing an explanation.

**July 2018: Defendant, again, failed to accommodate Plaintiff.**

67. In July 2018, Plaintiff, again, submitted requests for reasonable accommodations before she was deployed to Anniston, Alabama, for training.

68. Burchette finally submitted Plaintiff's accommodations requests through the Disability Employment Program Manager.

69. However, Plaintiff did not receive an ergonomic chair or workstation during this mandatory training or for any off-site meetings or deployments.

70. In December 2018, nearly two years after her initial request for reasonable accommodations, Plaintiff was provided an "alternative" chair for a deployment.

**Feb. 2019: Plaintiff contacted an EEO counselor to initiate a new complaint.**

71. In February 2019, Plaintiff reached out to the FEMA Office of Equal Rights and spoke to an EEO Counselor about filing a new retaliation complaint.

**Mar. 2019: Defendant gave Plaintiff an unfair performance rating,
revoked her telework privileges, and put her on a PIP.**

72. On or around March 11, 2019, Burchette met with Plaintiff and falsely accused her of engaging in an inappropriate conversation and sending an unprofessional email. Although the alleged incidents occurred in December 2018, no one had ever mentioned them to Plaintiff.

73. Burchette also told Plaintiff that she would not receive a monetary award for her 2018 performance. This was the first year Plaintiff did not receive a monetary award.

74. On information and belief, Plaintiff was the only employee on her team who did not get a monetary award for 2018. Plaintiff was also the only employee on her team who had a disability and engaged in protected EEO activity.

75. Burchette told Plaintiff that she would be placed on a Performance Improvement Plan ("PIP") and, consequently, would no longer be eligible for telework.

76. Burchette instructed Plaintiff to review her 2018 yearly evaluation in the FHR system. Burchette rated Plaintiff as unsatisfactory overall and in "Communication" and "Teamwork and Cooperation," two of her five core competencies.

77. Burchette's reasons for rating Plaintiff as unsatisfactory were false. Plaintiff successfully performed her duties during the review period.

78. On or around May 13, 2019, Burchette formally issued Plaintiff the PIP.

**July 2019: Defendant proposed Plaintiff's removal after she filed her formal complaint.**

79. On May 17, 2019, Plaintiff filed a second EEO complaint against Burchette.

80. On July 11, 2019, Burchette issued Plaintiff a Notice of Proposed Removal for failing the PIP.

81. On the contrary, Plaintiff successfully performed during the PIP and throughout her employment with Defendant.

**Aug. 2019: Defendant denied Plaintiff's FLMA leave request.**

82. In May 2019, Plaintiff was in a serious car accident and suffered a concussion.

83. Plaintiff submitted requests for telework as a reasonable accommodation. Burchette denied her requests.

84. Consequently, in August 2019, Plaintiff submitted a request for part-time and intermittent FMLA leave from August 22, 2019, to October 31, 2019.

85. Plaintiff was eligible for FMLA leave because she had been employed by Defendant for 12 months and had worked at least 1,250 hours during the previous 12-month period.

86. However, Burchette never granted Plaintiff's FMLA request.

**Sept. 2019: Defendant denied Plaintiff a monetary award and
within-grade increase and removed her from federal employment.**

87. On or around September 25, 2019, Burchette sent Plaintiff a letter stating that she would not receive a within-grade step increase due to performance issues.

88. On September 27, 2019, Plaintiff's second-level supervisor, Deputy Director Kim Kadesch, issued a written decision to remove Plaintiff from her federal employment, effective September 28, 2019.

**COUNT 1**

**29 U.S.C. § 791 *et. seq.*– Failure to Provide Reasonable Accommodations**

89. Plaintiff repeats and realleges paragraphs 1–88, above, as if more fully set forth herein.

90. Defendant failed to engage in the interactive process and denied Plaintiff reasonable accommodations for her disability.

91. By and through its conduct, Defendant violated the Rehabilitation Act.

92. As a result, Plaintiff has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 2
### 29 U.S.C. § 791 *et. seq.* – Disability Discrimination

93. Plaintiff repeats and realleges paragraphs 1–92, above, as if more fully set forth herein.

94. Defendant denied Plaintiff a monetary award for her 2018 performance because of her disability.

95. By and through its conduct, Defendant violated the Rehabilitation Act.

96. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 3
### 29 U.S.C. § 791 *et. seq.* – Disability Discrimination

97. Plaintiff repeats and realleges paragraphs 1–96, above, as if more fully set forth herein.

98. Defendant denied Plaintiff a within-grade increase in 2019 because of her disability.

99. By and through its conduct, Defendant violated the Rehabilitation Act.

100. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 4
### 29 U.S.C. § 791 *et. seq.* – Disability Discrimination

101. Plaintiff repeats and realleges paragraphs 1–100, above, as if more fully set forth herein.

102. Defendant revoked Plaintiff's telework privileges because of her disability.

103. By and through its conduct, Defendant violated the Rehabilitation Act.

104. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 5

### 29 U.S.C. § 791 *et. seq.* – Disability Discrimination

105. Plaintiff repeats and realleges paragraphs 1–104, above, as if more fully set forth herein.

106. Defendant subjected Plaintiff to a hostile work environment because of her disability.

107. By and through its conduct, Defendant violated the Rehabilitation Act.

108. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 6

### 29 U.S.C. § 791 *et. seq.* – Disability Discrimination

109. Plaintiff repeats and realleges paragraphs 1–108, above, as if more fully set forth herein.

110. Defendant terminated Plaintiff's employment because of her disability.

111. By and through its conduct, Defendant violated the Rehabilitation Act.

112. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 7

### 29 U.S.C. § 791 *et. seq.* – Retaliation

113. Plaintiff repeats and realleges paragraphs 1–112, above, as if more fully set forth herein.

114. Defendant denied Plaintiff a monetary award for her 2018 performance because of her protected activity.

115. By and through its conduct, Defendant violated the Rehabilitation Act.

116. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 8

### 29 U.S.C. § 791 *et. seq.* – Retaliation

117. Plaintiff repeats and realleges paragraphs 1–116, above, as if more fully set forth herein.

118. Defendant denied Plaintiff a within-grade increase in 2019 because of her protected activity.

119. By and through its conduct, Defendant violated the Rehabilitation Act.

120. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 9

### 29 U.S.C. § 791 *et. seq.* – Retaliation

121. Plaintiff repeats and realleges paragraphs 1–120, above, as if more fully set forth herein.

122. Defendant revoked Plaintiff's telework privileges because of her protected activity.

123. By and through its conduct, Defendant violated the Rehabilitation Act.

124. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 10

### 29 U.S.C. § 791 *et. seq.* – Retaliation

125. Plaintiff repeats and realleges paragraphs 1–124, above, as if more fully set forth herein.

126. Defendant subjected Plaintiff to a hostile work environment because of her protected activity.

127. By and through its conduct, Defendant violated the Rehabilitation Act.

128. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 11

### 29 U.S.C. § 791 *et. seq.* – Retaliation

129. Plaintiff repeats and realleges paragraphs 1–128, above, as if more fully set forth herein.

130. Defendant terminated Plaintiff's employment because of her protected activity.

131. By and through its conduct, Defendant violated the Rehabilitation Act.

As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 12
### 42 U.S.C. § 2000e *et seq*. – Retaliation

132. Plaintiff repeats and realleges paragraphs 1–131, above, as if more fully set forth herein.

133. Defendant denied Plaintiff a monetary award for her 2018 performance because of her protected activity.

134. By and through its conduct, Defendant violated Title VII.

135. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 13
### 42 U.S.C. § 2000e *et seq*. – Retaliation

136. Plaintiff repeats and realleges paragraphs 1–135, above, as if more fully set forth herein.

137. Defendant denied Plaintiff a within-grade increase in 2019 because of her protected activity.

138. By and through its conduct, Defendant violated Title VII.

139. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 14
### 42 U.S.C. § 2000e *et seq*. – Retaliation

140. Plaintiff repeats and realleges paragraphs 1–139, above, as if more fully set forth herein.

141. Defendant revoked Plaintiff's telework privileges because of her protected activity.

142. By and through its conduct, Defendant violated Title VII.

143. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 15
### 42 U.S.C. § 2000e *et seq*. – Retaliation

144. Plaintiff repeats and realleges paragraphs 1–143, above, as if more fully set forth herein.

145. Defendant subjected Plaintiff to a hostile work environment because of her protected activity.

146. By and through its conduct, Defendant violated Title VII.

147. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 16
### 42 U.S.C. § 2000e *et seq*. – Retaliation

148. Plaintiff repeats and realleges paragraphs 1–147, above, as if more fully set forth herein.

149. Defendant terminated Plaintiff's employment because of her protected activity.

150. By and through its conduct, Defendant violated Title VII.

As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 17
### 29 U.S.C. § 2615 – Interference with FMLA Rights

151. Plaintiff repeats and realleges paragraphs 1–150, above, as if more fully set forth herein.

152. Defendant denied Plaintiff's request for FMLA leave.

153. By and through its conduct, Defendant violated the FMLA.

154. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, liquidated damages, pain and suffering, emotional distress, and mental anguish.

## JURY DEMAND

Plaintiff demands a trial by jury on all Counts.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment against Defendant on all Counts, order Defendant to reinstate Plaintiff to her employment, and award Plaintiff lost wages and benefits; an equal amount as liquidated damages; compensatory damages for pain and suffering; pre- and post-judgment interest; the amount of tax on any award; reasonable attorney's fees; litigation costs; and any other relief as is fair and just.


Dated: December 23, 2020                      Respectfully submitted,

ALAN LESCHT AND ASSOCIATES, P.C.

_____/s/ Sara McDonough___

Alan Lescht [441691]
Sara McDonough [1022641]
1825 K Street, NW, Suite 750
Washington, DC 20006
Tel (202) 463-6036
Fax (202) 463-6067
alan.lescht@leschtlaw.com
sara.mcdonough@leschtlaw.com
*Counsel for Plaintiff*